UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OMAR SITTO,

                Petitioner,                Case Number: 00-10267-BC
                                              Honorable David M. Lawson

v.

BARBARA BOCK,

                Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Omar Sitto, a state inmate presently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a petition for a writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254.  The petitioner was convicted in 1993 along with others of conspiracy to possess with intent to deliver 650 grams of cocaine.  Mich. Comp. Laws. §§ 750.157a, 333.7401(2)(a)(i).  The petitioner was sentenced to life imprisonment without possibility of parole, but his sentence was subsequently modified by statute to provide for the possibility of parole.  *See* Mich. Comp. Laws § 791.234(6).  In his petition, the petitioner claims that he was deprived of due process when he was denied a hearing or a new trial on the basis of newly discovered evidence that a key witness perjured himself; the prosecutor engaged in misconduct by making improper statements at trial; the petitioner's right of confrontation was violated where a witness refused to answer certain questions and the trial court failed to respond properly; the jury was improperly instructed; and the petitioner was prejudiced by cumulative trial error.  The respondent contends that the claims are procedurally defaulted and otherwise without merit.  The Court concludes that the petition must be denied.

I.

The petitioner was tried by a jury in the Oakland County, Michigan circuit court upon evidence that he participated in a conspiracy to possess cocaine with the intent to deliver it. Witnesses described a drug organization led by two cousins, Ray Akrawi and Harry Kalasho, from whom the petitioner and others bought cocaine. The prosecution contended that the petitioner would then sell the cocaine to his cousin, Mazen Sitto, and collect a commission from the transaction.

At trial, Salwan Asker, a drug dealer for Harry Kalasho, testified that he witnessed the petitioner engage in drug transactions on at least two occasions. Once, when Asker was at B & S Collision Shop, he saw the petitioner and his cousin, Mazen Sitto, pull up in separate cars. The petitioner exited his car carrying a grocery bag and got into Mazen's car; then Mazen opened his trunk, removed a white plastic grocery bag from the trunk, and got back into the car. Asker said that he could see that the bag from the trunk had money in it. The petitioner then left the car with the bag that Mazen had removed from the trunk, and Mazen drove off with the bag that the petitioner had brought to the car. Asker testified that the petitioner then came over to Asker and told him that "my cousin just copped a couple key – couple of kilos." Tr., 8/5/1993, at 43.

On another occasion, Asker was at Ray Akrawi's house when the petitioner arrived and spoke to Akrawi. Then Ray spoke to "Little Sal," who left and came back with a kilo of cocaine, and the petitioner asked Asker for a ride to B & S Collision Shop. The petitioner had a kilo of cocaine in a bag as Asker drove him to B & S, where the petitioner got into Mazen's car with the bag and later returned to Asker's car with a small bag of money. Asker testified that the petitioner counted the money, putting $2,000 or $2,500 in his pocket. The pair then returned to Akrawi's house, where the petitioner gave the rest of the money to Akrawi. Asker also testified that he saw

the petitioner at Akrawi's house every day and that the petitioner sometimes borrowed one of Akrawi's cars.  Asker also testified that he sold 750 grams of cocaine to the petitioner on one occasion.

Asker admitted that he began cooperating with law enforcement officials after he was detained by the Immigration and Naturalization Service because he was in the country illegally.  He had testified in other cases and had been relocated to California for his safety, but he had pleaded guilty there to charges involving theft and drug possession.  Asker admitted that he was being held on a material witness warrant to ensure that he would testify in the case.  He testified that he was addicted to heroin, and he also used cocaine and marijuana.  He identified some aliases that he used when he sold drugs and admitted that he had once testified under an alias.

Another dealer, Khader "George" Naoum, testified that he bought his drugs primarily from Mazen Sitto after Aboud Sitto, the petitioner's brother, became an unreliable supplier.  Naoum testified that he saw the petitioner deliver cocaine to Mazen on one occasion when Naoum was at Mazen's house to buy cocaine.  After speaking to Mazen on the phone about the deal, Naoum went to Mazen's house to meet him.  When he got there, Mazen was not present but the petitioner was waiting for Mazen in the driveway.  When Mazen arrived, the petitioner took a bag from his own car and the three proceeded into the house.  Mazen and the petitioner entered Mazen's bedroom; they were whispering, and through the partially open door Naoum saw the petitioner take a kilo of cocaine from the bag and give it to Mazen, then leave.  When Naoum entered the bedroom, Mazen took another kilo of cocaine out of the bag and cut it open so he could sell a small amount to Naoum.

Naoum admitted that he was in prison and the Immigration and Naturalization Service was seeking to deport him.  He testified that Detective Diane Campbell told him she would do what she

-3-

could to help him.  He also admitted that he continued to sell drugs when he was trying to work out a deal with law enforcement and lied about it when he pleaded guilty.  He testified that he used cocaine but had stopped using marijuana.

Officer Diane Campbell testified that phone records showed that both Mazen Sitto and Omar Sitto were regularly paged by Richard Baughman, another dealer who sometimes supplied Naoum when Mazen Sitto was not available.  She testified that the phone number for Mazen's pager was 440-8801 and the number for the petitioner's pager was 440-8802.  The phone records indicated that Baughman stopped paging the petitioner around the time that the investigation against Ray Akrawi began.

On August 13, 1993, the jury found the petitioner guilty of conspiracy to possess with intent to deliver 650 grams of cocaine.  He was sentenced to a mandatory term of life imprisonment without the possibility of parole.  The petitioner's conviction was affirmed in his appeal of right, *People v. Sitto*, No. 170049, 1997 WL 33354578 (Mich. Ct. App. Jan.10, 1997) (*per curiam*), and the Michigan Supreme Court denied the petitioner's application for leave to appeal.  *People v. Sitto*, No. 109210, 1997 WL 696855 (Mich. Nov. 7, 1997).

In 1998, the petitioner filed a motion for relief from judgment in the state trial court pursuant to Michigan Court Rule 6.500 on the ground that Salwan Asker had recanted his testimony.  The trial court denied the motion for relief from judgment, ruling that although Asker's testimony was important and the petitioner satisfied the "cause" prong of the rule for not raising the issue in his direct appeal, sufficient evidence remained in the record to support the petitioner's conviction and therefore the petitioner could not meet the "prejudice" prong.  *People v. Sitto*, No. 91-109035 FC (Oakland County Cir. Ct. June 14, 1999).  The Michigan Court of Appeals denied the petitioner's

-4-

application for leave to appeal "for lack of merit in the grounds presented." *People v. Sitto*, No. 220635 (Mich. Ct. App. Oct. 8, 1999). The Michigan Supreme Court denied the petitioner's application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sitto*, 461 Mich. 1000, 610 N.W.2d 926 (2000).

The petitioner filed his petition for writ of habeas corpus through counsel on July 20, 2000. The respondent filed a motion to dismiss the petition as barred by the statute of limitations. This Court ruled that the petition was not barred by the statute of limitations, but found that it contained an unexhausted issue. *Sitto v. Bock*, 207 F. Supp. 2d 668, 673-77 (E.D. Mich. 2002). Because the Court was concerned that dismissal of the petition without prejudice might preclude consideration of the petitioner's claims due to the expiration of the statute of limitations, the Court held the petition in abeyance. *Id.* at 676-77.

The petitioner returned to state court and filed a second motion for relief from judgment pursuant to Michigan Court Rule 6.500. In his motion, the petitioner raised the following claim:

> Defendant's conviction and sentence should be set aside on the basis that this Court's refusal to grant him a hearing on his newly discovered evidence claims, or to set aside his conviction on the basis of evidence which established his innocence, denied him due process; in the alternative, the Court should grant him the hearing that due process requires, and upon full exploration of all the facts, set aside his conviction [and] sentence on the basis that it was based on perjured testimony, and the admission of such testimony resulted in the conviction of a person who his actually innocent of the charge.

However, the trial court ruled that the petitioner had not presented newly discovered evidence that would allow the consideration of a second motion for relief from judgment under Michigan Court Rule 6.502(G)(2). *People v. Sitto*, No. 1991-109035-FC (Oakland County Cir. Ct. Jan. 23, 2003). The petitioner apparently did not appeal the trial court's order.

-5-

On February 4, 2003, the petitioner filed his amended habeas petition in this Court, raising the following claims:

I.   The Michigan courts' refusal to grant petitioner a hearing on his newly discovered evidence claims, or to set aside his conviction on the basis of evidence which established his innocence, denied him due process.

II.  Improper, deliberately misleading statements by the prosecutor denied petitioner a fair trial.

III. In refusing to take adequate remedial measures in the face of a crucial witness's refusal to answer proper questions regarding bias and interest, the trial court failed to adequately protect petitioner's confrontation rights.

IV.  The trial court's refusal to properly instruct the jury on the law applicable to the charge of conspiracy, as well as to give necessary cautions regarding witness credibility, denied petitioner a fair trial.

V.   The cumulative effect of the errors committed during the trial denied petitioner a fair trial and due process.

The respondent has answered the petition and contends that because the petitioner's claims are procedurally defaulted and without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petition was filed after the Act's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997). The Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

> was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

-7-

indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### A.

The petitioner first contends that the state courts' refusal to set aside his conviction or grant him a hearing on his newly discovered evidence claims denied him due process of law. The respondent replies that this claim is procedurally defaulted, not cognizable on habeas review, and is ultimately without merit.

The petitioner argues that the only testimony linking him to the drug conspiracy was that of Salwan Asker and Khader "George" Naoum, and the testimony of both witnesses has been called

into question.  The petitioner asserts that Asker recanted his testimony in 1997 in a tape-recorded interview taken by Mark Kriger, who was Mazen Sitto's attorney, and private investigator John Gifford.  In excerpts from a transcript of the tape, Asker claimed that he lied in his testimony at Mazen Sitto's trial.  Asker claimed that he lied when he said that he participated in cocaine transactions with Mazen Sitto, and he specifically recanted his testimony with regard to witnessing the petitioner and Mazen Sitto exchanging drugs for money at B & S Collision.  When Asker was asked whether he had indicated to the prosecutors that his testimony would not be true, Asker replied, "They knew. They knew."  Petr's Mem. in Support of Pet. at 10.  He added, "Well, a lot of DA [sic] knew. Detroit Police knew.  They told them what to say."  *Ibid*.  Asker also stated that the prosecutor "told me sometimes about certain things that I never said to him."  *Ibid*.  Asker claimed that authorities gave him money, gifts, and Methadone, and that they provided him with places to stay.  Asker also claimed that he "got drunk with" Officer Campbell.  *Id*. at 11.  Asker claimed that he was coming forward to clear his conscience.  *Ibid*.  The petitioner claims that Asker was murdered shortly after this interview.  The petitioner argues that he is actually innocent and questions the credibility of Naoum's testimony by pointing to the information that was raised at trial to discredit Naoum.

To support his claim of innocence, the petitioner has provided the results of a polygraph test he took after he filed his original habeas corpus petition.  On September 18, 2000, the petitioner underwent a voluntary, private polygraph examination at the Ojibway Correctional Facility in Marenisco, Michigan.  During the examination, the petitioner was asked three questions relevant to Asker's testimony:  1) "Did Salwan Asker tell the truth that you bought drugs from him?" 2) "Did Salwan Asker lie when he said you delivered drugs at the collision shop?" and 3) "Was Salwan

-9-

Asker's testimony about your drug dealings truthful?" *See* Petr's Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus ("Supplemental Memorandum") at 2. The petitioner answered "no" to questions number 1 and number 3 and "yes" to number 2. That is, the petitioner replied "no" when asked if Asker's testimony about drug dealing by the petitioner was truthful and "yes" when asked if Asker lied when he said the petitioner delivered drugs at the collision shop. The polygraph examiner concluded that the petitioner was "being truthful" when he gave those answers. *Id.*, attached Polygraph Examination Report at 2. The petitioner submitted this information to the state court in his motion for relief from judgment, but the motion was denied because it was the petitioner's second such motion and because the polygraph results did not qualify as new evidence.

1.

The petitioner contends that the state trial court erred in denying his motion for a new trial based upon his newly discovered evidence that Salwan Asker committed perjury at the petitioner's trial. Although it appears that the petitioner failed to seek leave to appeal this claim, the respondent does not argue that it is unexhausted; rather, the respondent argues that the claim is procedurally defaulted. It is unnecessary for this Court to determine whether this claim is procedurally defaulted, however, because that issue "raises more questions than the [claim] on the merits." *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Upon review, the Court concludes that the petitioner's claim lacks merit. Because the petitioner's claim is without merit, the Court need not address the issue of exhaustion. *See* 28 U.S.C. § 2254(b)(2).

-10-

2.

The petitioner's claim that the Michigan state courts deprived him of due process by failing to hold an evidentiary hearing or grant him a new trial is not cognizable on habeas review because the argument that an error was made on postconviction review does not challenge the constitutionality of the petitioner's custody. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1987); *see also Roe v Baker*, 316 F.3d 557, 571 (6th Cir. 2002). To the extent the petitioner challenges the state court's handling of his postconviction review, the petitioner is not entitled to habeas relief.

3.

The petitioner asserts that Asker's recantation is evidence that he is actually innocent of participation in the drug conspiracy. Although actual innocence may excuse procedural default, it does not constitute a constitutional claim in itself. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), *cited in Schlup v. Delo*, 513 U.S. 298, 314 (1995). The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact. *Herrera*, 506 U.S. at 400.

The petitioner argues that the Supreme Court's opinion in *Herrera* left open the possibility that a petitioner who could demonstrate actual innocence could be entitled to habeas relief. If that were the proper interpretation of *Herrera*, however, the standard of review in such a case would be "extraordinarily high." *Schlup*, 513 U.S. at 315-16 (quoting *Herrera*, 506 U.S. at 426 (O'Connor, J., concurring)). Even if actual innocence alone is enough to warrant habeas relief, the petitioner

-11-

has not shown that he was actually innocent under the lower standard set out in *Schlup v. Delo*. *Schlup*, 513 U.S. at 317 (explaining that "[i]f there were no question about the fairness of the criminal trial, a *Herrera*-type claim would have to fail unless the federal habeas court is itself convinced that those new facts unquestionably establish Schlup's innocence"). Under the *Schlup* standard of "actual innocence," "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner has made no such showing in this case.

The petitioner supports his claim of actual innocence with the unsworn recantation of a witness whose credibility was questionable at trial. Because the witness is now dead, the petitioner is unable to offer a sworn statement to support this position. This evidence, although new, is not reliable; the witness was a known drug user who testified in exchange for leniency and stated under oath that he saw the petitioner deliver drugs. The question remains whether Asker was telling the truth at trial, but that matter was resolved by the jury after Asker was fully cross-examined and all his foibles were exposed. This Court will not disturb the jury's assessment.

The petitioner's polygraph results also fail to constitute new reliable evidence, as the state trial court noted, because the petitioner's opinion that Asker was lying in his testimony was known at the time of trial. Moreover, the polygraph examination answers do not address the petitioner's

-12-

innocence.  He was never asked if he conspired to sell cocaine.  The possibility remains, therefore, that Asker was lying *and* the petitioner is guilty.  This conundrum is not amenable to resolution under § 2254, however.

Furthermore, the petitioner has failed to show that it is more likely than not that no reasonable juror would have convicted him in light of this "new evidence."  The evidence does not call into question Khader Naoum's testimony that he saw the petitioner deliver cocaine to Mazen Sitto in Mazen Sitto's house, or Diane Campbell's testimony linking the petitioner's pager number to others involved in the drug conspiracy.  Considering the evidence presented at trial that remains untouched by the "new evidence" presented by the petitioner, it is unlikely that no reasonable juror would have convicted the petitioner.  The petitioner is not entitled to habeas relief under any "actual innocence" standard.

The petitioner also contends that the State used perjured testimony to convict him.  "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.3d 817, 822 (6th Cir. 1989)).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false.  *Coe*, 161 F.3d at 343.

In this case, the petitioner has not shown that Asker's trial testimony was actually false.  Rather, he has alleged it, supporting this claim with Asker's recantation and the results of his own polygraph examination.  Moreover, the only evidence that the State knew of or deliberately elicited

-13-

or failed to correct any perjury in this case are Salwan Asker's comments in his unsworn recantation statements that "they knew," and "Detroit Police knew," and "a lot of DA knew," when asked if he had indicated to the prosecution and police "ever at any time" that "any of these things" in his trial testimony were not true.  Petr's Mem. in Support of Pet. at 10.  Given Asker's questionable credibility, the limited, vague nature of the questions and answers he provided on the subject of the prosecution's knowledge of the truthfulness of his testimony, and the absence of any allegation that the actual prosecuting authority had such knowledge (the case was prosecuted by the Oakland County, Michigan prosecutor, who does not oversee the Detroit police department), this Court is not persuaded that the petitioner has shown that the prosecution knew or should have known that Asker's trial testimony against the petitioner was perjurious.

In the present case, this Court concludes that the petitioner has failed to make a sufficiently persuasive or compelling demonstration through Asker's recantation statement and the petitioner's polygraph examination results that he is innocent of this crime.  For all of the above-stated reasons, the petitioner's claim that the trial court denied him due process by denying without evidentiary hearings his motions for relief from judgment seeking a new trial is denied.

## B.

The petitioner contends that improper, deliberately misleading statements by the prosecutor denied him a fair trial.  These statements include the prosecutor improperly vouching for the truthfulness of prosecution witnesses, improperly bolstering witnesses' testimony, and improperly appealing to jurors' fears and prejudices.  The respondent replies that the petitioner's prosecutorial misconduct claims are procedurally defaulted and that most of his claims of prosecutorial

-14-

misconduct do not involve misconduct at all, but involve asking and encouraging the jury to draw reasonable inferences from the evidence.

The respondent argues that most of the petitioner's habeas prosecutorial misconduct claims are barred by the doctrine of procedural default because the petitioner failed to set forth the specific factual basis for these claims or specific citations to the record in his direct appeal. The petitioner replies that he did set forth in his brief on appeal:

> a detailed recitation of the trial record, and repeated references to the complained-of prosecutorial overreaching (*see, e.g.;* Brief on Appeal, p. 43); [and] in his Application for Leave to Appeal to the Michigan Supreme Court, the petitioner attempted to correct the Michigan Court of Appeals' inaccurate observation that the petitioner's arguments were insufficiently particular, pointing out specific page numbers, references, and citations of authorities (*see*, Application for Leave to Appeal, pp. 18-21), but the Supreme Court declined to review the case.

Reply to Answer in Opposition to Amended Petition for Writ of Habeas Corpus at 8. A careful review of the petitioner's brief on appeal to the Michigan Court of Appeals reveals that the petitioner brought to the attention of the court of appeals only one specific instance of prosecutorial misconduct. The petitioner's other prosecutorial misconduct claims were not "fairly presented" to the state courts, and the petitioner argues that his "actual innocence" should excuse any procedural default. However, this Court has concluded that the petitioner has not demonstrated that he is actually innocent. The petitioner's prosecutorial misconduct claims that were not presented with specificity to the state court of appeals are therefore barred from habeas review. Nevertheless, all of the prosecutorial misconduct claims are without merit here because they do not rise to the level of a due process violation.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.

-15-

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643-46 (1974); *see also Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation").  A court must focus on "the fairness of the trial, not the culpability of the prosecutor."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

A reviewing court must first determine whether the statements of the prosecutor were improper; if the statements were improper, the court must determine whether they were flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006).  Proper statements are arguments based on the evidence in the record that are not designed to inflame the passions or prejudices of the jury.  *Id.* The Sixth Circuit has prescribed four factors to consider whether improper statements were flagrant: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements "were deliberately or accidentally presented to the jury"; and (4) whether the other evidence against the defendant was substantial.  *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

In this case, the great majority of the remarks made by the prosecutor were proper.  Although a prosecutor cannot express a personal opinion as to the truth or falsity of a witness, a prosecutor may argue that a witness is lying as part of a discussion weighing the evidence.  *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999).  The petitioner's trial lasted about two weeks and involved the testimony of many witnesses.  The prosecutor presented a fairly lengthy two-part closing argument, which is recorded in eighty-six pages of transcript.  The majority of the

-16-

prosecutor's presentation was a summary of the evidence presented against the petitioner.  The challenged instances of "vouching" all involve remarks in which the prosecutor showed that the testimony of a witness was corroborated by some other testimony or evidence, or argued that the witness was without reason to lie.  For example, the prosecutor commented that the fact that witnesses such as Asker and Naoum, who had no opportunity to discuss their testimony together because of Naoum's incarceration, testified essentially identically to material facts showed that they were telling the truth.  The prosecutor also commented that the fact that Danny Satterfield and Naoum made essentially identical statements to officer Campbell without having had the opportunity to discuss the matters showed that they were telling the truth.  These and other similar comments were not improper.  Rather, they were reasonable and permissible inferences from the evidence summarized in closing.

The petitioner also maintains that the prosecutor improperly bolstered the testimony of prosecution witnesses.  Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.  *See United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir.1997).  The petitioner contends that the prosecutor improperly bolstered Asker's testimony by stating that there could be no doubt that Asker was qualified to identify a drug deal and explaining that Asker had testified in the trials of other members of the conspiracy.  The petitioner argues that the prosecutor improperly bolstered Sergeant Dale Thibideau's testimony by stating that Thibideau was intimately familiar with the workings of Chaldean drug dealers in the Seven Mile and Woodward area of Detroit.  However, these comments were reasonable inferences from the testimony of Asker and Thibideau; Asker testified that he had

-17-

dealt in drugs and Thibideau's testimony related to his knowledge of crime in the area. These statements, therefore, were not constitutionally improper.

The petitioner contends that the prosecutor improperly bolstered Salwan Asker's testimony by commenting on a number of other cases in which Asker had testified. The petitioner argues that these comments implied that Asker's testimony was corroborated by information known by the government but not presented to the jury. Asker was questioned about other cases in which he had testified for the prosecution. However, this questioning was limited to asking him if he had, indeed, testified against various people. Here, the prosecutor's comments may have had the effect of improperly bolstering Asker's testimony by implying that the government believed Asker was a useful, credible witness because of his testimony in other cases. However, this evidence was also useful to the defense because it allowed the defense to argue that Asker was a witness who would testify against anyone to save himself from incarceration or deportation. Therefore, this Court is not persuaded that this evidence and the prosecutor's comments on it deprived the petitioner of a fair trial.

The petitioner maintains that the prosecutor made improper appeals to jury sympathy and jury prejudice by references to the problems of drug addiction suffered by persons such as Kevin Daniel Satterfield, who allegedly obtained their cocaine from the petitioner and his co-conspirators; reference to the apparently drug-related killing of Harry Kalasho; and reference to the petitioner's presence in Aboud Sitto's home with fifteen other Arab males at the time of his arrest a year after the conspiracy, allegedly waiting for a delivery of cocaine.

The Michigan Court of Appeals found that this claim lacked merit, explaining:

> Defendant first argues that repeated acts of prosecutorial misconduct denied him a fair trial. We disagree. Prosecutorial misconduct issues are decided case by case.

-18-

This court examines the pertinent portion of the record and evaluates a prosecutor's remarks in context. *People v. Legrone*, 205 Mich. App 77, 82; 517 N.W.2d 270 (1994). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Id.* at 82-83. The only specific instance of misconduct alleged in defendant's appellate brief occurred during closing argument. Defendant claims that the prosecutor improperly argued that on the morning of his arrest, defendant was with Tommy Kalasho, the brother of drug dealer Harry Kalasho, and was awaiting a drug delivery. Because defendant cites no authority in support of his argument that these comments were improper, he has abandoned this issue on appeal. *People v. Piotrowski*, 211 Mich. App 527, 530; 536 N.W.2d 293 (1995). In any event, the prosecutor's remarks were based on the testimony of Sgt. Thibodeau and the reasonable inferences arising therefrom. Hence, the remarks were not improper. *People v. Bahoda*, 448 Mich. 261, 282; 531 N.W.2d 659 (1995); *People v. Fisher*, 193 Mich. App 284, 291; 483 N.W.2d 452 (1992).

*People v. Sitto*, No. 170049, 1997 WL 33354578, at *1 (Mich. Ct. App. Jan.10, 1997).

The prosecutor's argument that the petitioner was waiting for a cocaine delivery at Aboud Sitto's home was improper. The trial court had ruled that details relating to the circumstances surrounding the petitioner's arrest were not admissible because they were irrelevant. Evidence showed that the petitioner and his companions were engaged in illegal gambling at the house, not drug dealing, when the petitioner was arrested. This reference was not flagrant, however. The remark was isolated and substantial evidence was presented at trial tying the petitioner to the conspiracy. Reference to the nationality or national origin of the persons present, although possibly inadvertent, was unnecessary, improper, and potentially inflammatory and prejudicial. However, this Court is not persuaded that this single reference to the nationality or national origin of the persons present at Aboud Sitto's home denied the petitioner a fundamentally fair trial or permeated his trial with gross unfairness. Therefore, the state court's resolution of this issue was not contrary to or an unreasonable application of federal law.

The prosecutor's comments about the problems of drug addiction were brief and entirely secondary to his lengthy recitation of the evidence of the petitioner's participation in the cocaine

-19-

distribution conspiracy. This Court is not persuaded that these comments denied the petitioner a fair trial or could reasonably be interpreted as an appeal to convict the petitioner on the basis of a desire to solve the problem of drug addiction, rather than on the basis of evidence of his guilt of the crime charged.

The petitioner also contends that the prosecutor improperly and incorrectly misstated the facts when he stated that the petitioner did not have a job, thereby improperly strengthening the inference that the petitioner was conspiring to sell cocaine to obtain income. This comment was made in the prosecutor's explanation of the conspirators' practice of buying and keeping cars under the names of other people to hide their drug income and avoid suspicion by tax authorities. This statement was brief, minor, and ancillary to the point of the argument. It is therefore not flagrant and this Court is not persuaded that the statement denied the petitioner a fair trial. The petitioner is not entitled to habeas relief on his claims of prosecutorial misconduct.

## C.

The petitioner next contends that his right of confrontation was denied when witness Rene Arias refused to answer a question about any sentence reduction he may have received in return for his testimony and the trial judge refused to strike the witness's entire testimony. Arias testified that he worked for the Jiminez family. According to Arias, the Jiminez family imported cocaine in shipments of hundreds of kilograms in boats and planes from Colombia to Florida. Arias testified that his job was to drive the cocaine from Florida to Michigan in cars with secret compartments where the cocaine was hidden. Arias said that he sold or delivered the cocaine to Ray Akrawi, Sadd Bahoda, Atheer Gapi, and others in Detroit, Michigan. On direct testimony, Arias testified that he was convicted of cocaine charges by federal authorities. In exchange for his testimony against

William Jiminez, Ray Akrawi, Sadd Bahoda, Atheer Gapi, and others, Arias's federal prison sentence was reduced from thirty to fifteen years.  Trial Tr. 8/3/1993, at 113-114.  Arias also stated that he got "a deal with Oakland County over here, but I ain't got nothing with Wayne."  *Id.* at 114. Arias offered no testimony against the petitioner and never mentioned the petitioner's name.  The prosecutor asked Arias if he had heard of Omar Sitto.  Arias replied that he heard the name when he was served with a subpoena, but did not recognize it.  *Id.* at 211-212.

On cross-examination, Arias denied that he was receiving any sentence consideration for his testimony at the petitioner's trial.  However, he admitted on further questioning that an Oakland County prosecutor promised he would write a favorable letter for him if he testified, and the letter might favorably effect his federal sentence and his immigration status.  On cross-examination, Arias refused to answer when asked when he expected to be released from prison and if his fifteen year sentence had been further reduced.  *Id.* at 218-219.  Arias said that he did not want to say when he would be released from prison because he was afraid of being murdered upon his release.  Arias stated that he had been told "we got bullets in your name" by an unnamed person or persons.  *Id.* at 219.  Minutes later, on re-direct examination, however, Arias was asked by the prosecutor if he had received a further reduction of his fifteen-year sentence.  Arias admitted that "[y]es, I got some (inaudible), I just don't want to tell anybody when I get out."  *Id.* at 219.

The petitioner contends that the trial judge violated his right of confrontation by failing to strike Arias's entire testimony when he refused to answer defense counsel's question about whether he had "any years chopped off from the 15 down yet?"  *Id.*  at 218.

The Michigan Court of Appeals rejected this claim, explaining:

The record reflects that defense counsel conducted a thorough, unrestricted cross-examination of Arias, asking him, among other things, about prior criminal

-21-

convictions, prior bad acts, and prior drug abuse.  Arias was also questioned thoroughly both on direct and cross-examination regarding the reduction in his sentence from 30 to 15 years as a result of his cooperation with authorities. Defendant thus placed before the jury facts upon which an inference of Arias' bias, prejudice or lack of credibility could be drawn.  Defendant's cross-examination of Arias allowed the jury to consider facts, including the sentencing consideration that Arias received, which might have influenced Arias' testimony.  Defendant was not deprived of his ability to test Arias' credibility. Defense counsel's cross-examination thoroughly attacked Arias' credibility.  The question that Arias refused to answer, whether he had received additional sentence reduction, was cumulative where Arias had already admitted that his sentence was reduced in exchange for his cooperation with authorities.  Under these circumstances, the trial court was not required to strike Arias' testimony.

*People v. Sitto*, 1997 WL 33354578, at *2-3 (citations omitted).

The Confrontation Clause of the Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion."  *Pointer*, at 404-05 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959)).  Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth."  *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted).  The Confrontation Clause allows trial judges discretion, however, to impose reasonable limits on cross-examination to prevent harassment, prejudice, or confusion of the issues, protect a witness' safety, or cease interrogation that is repetitive or only marginally relevant.

-22-

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985). "Where a trial court has limited but not totally precluded cross-examination as to motive [for testifying], the issue is whether the jury was otherwise in possession of sufficient information concerning formative events to make a discriminating appraisal of a witness' motives and bias." *United States v. Touchstone*, 726 F.2d 1116, 1123 (6th Cir. 1984) (internal quotations omitted).

The jury was informed that Arias received reductions in his sentence for his cooperation with law enforcement. On direct examination, Arias testified that his thirty-year federal sentence was reduced to fifteen years. It was implied that this reduction was in consideration for his testimony against Jiminez, Akrawi, Bahoda, and others, prior to the petitioner's trial. However, after first stating on cross-examination that he had not received anything for testifying at the petitioner's trial, Arias admitted on continued questioning that Oakland County prosecutor Bunting had promised to write letters for him that might favorably affect his sentence and immigration status.

Moreover, although Arias refused to answer defense counsel's questions about whether he had an additional eight years taken off his sentence and when he expected to be released from prison, on re-direct examination Arias did answer the prosecutor's question about whether he had received a further reduction in his fifteen-year sentence. Arias replied that he had, but he did not want to tell anyone when he would get out of prison, as he had been informed of threats on his life. Tr. 8/3/1993, at 218-219. Defense counsel, the prosecutor, and the trial court agreed that they did not want Arias to testify as to when he would be released from prison. The parties and the court also

-23-

agreed that they were satisfied with Arias's answers to this line of questioning. *Id.* at 219-220. It was unnecessary (and it would have been potentially dangerous) to insist on an exact answer as to how many years Arias's sentence had been reduced or when he expected to be released for the jury to understand that Arias had received some significant sentence reduction for testifying at the petitioner's trial. The cross-examination was sufficient to call into question Arias's motive to testify and credibility.

Therefore, the petitioner's jury was informed of Arias's generally unsavory background and, more importantly, that he had received a sentence reduction at least in part occasioned by his testimony at the petitioner's trial. The trial court did not curtail defense counsel's cross-examination in this regard. Furthermore, it cannot be said that Arias's initial denial of receiving sentencing consideration for testifying at the petitioner's trial and refusal to answer defense counsel's questions about whether his sentence had been reduced to eight years and when he expected to be released denied the petitioner's right of confrontation or was uncorrected perjury. Consequently, the state courts' resolution of this claim was not contrary to or an unreasonable application of federal law.

### D.

The petitioner also claims that he was denied a fair trial because the trial judge refused or failed to give several jury instructions requested by the defense. The respondent contends that this claim is procedurally barred and lacks merit. The state court of appeals did not enforce any procedural default the petitioner may have committed. Rather, the court of appeals addressed and denied the petitioner's jury instruction claims on the merits, without reference to any procedural deficiencies in the petitioner's preservation or presentation of these claims. Therefore, this Court may address the merits of these claims.

-24-

The Michigan Court of Appeals denied the petitioner's jury instruction claims, explaining:

Defendant next claims that the trial court failed to give certain requested jury instructions. This Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal. *People v. Davis*, 199 Mich. App 502, 515; 503 N.W.2d 457 (1993). Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. *People v. Reed*, 393 Mich. 342, 349-50; 224 N.W.2d 867 (1975); *People v. Harris*, 190 Mich. App 652, 664; 476 N.W.2d 767 (1991). Jury instructions must be read as a whole rather than extracted piecemeal to establish error. *People v. Dabish*, 181 Mich. App 469, 478; 450 N.W.2d 44 (1989). Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights. *People v. Wolford*, 189 Mich. App 478, 481; 473 N.W.2d 767 (1991). Error does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction. *Harris, supra* at 664. A trial court need not give requested instructions that the facts do not warrant. *People v. Dalton*, 155 Mich. App 591, 599; 400 N.W.2d 689 (1986).

Defendant first alleges that the trial court erred in denying his request to give a "special conspiracy instruction." The trial court did not err by rejecting the request because the charge as a whole covered the substance of the omitted instruction. *Harris, supra* at 664. The trial court instructed the jury that to find defendant guilty of the charged offense, it must find, beyond a reasonable doubt, that defendant and someone else knowingly agreed to commit the crime of possession with intent to deliver in excess of 650 grams of cocaine, that defendant intended to commit this crime, and that the agreement "took place or continued during the period from March 17, 1988 through on or about March 19, 1990." Further, the court instructed that the jury could "only consider what the Defendant did and said during the time the conspiracy took place," that a "person who joins a conspiracy after it has already been formed is only responsible for what he agreed to when joining, not for any agreement made by the conspiracy before he joined," and that members "of a conspiracy are not responsible for what other members do or say after the conspiracy ends." Hence, the jury instructions covered the substance of the omitted instruction. The trial court did not err by omitting the supplemental instruction.

Defendant also alleges that the trial court erred in omitting the supplemental instruction "on single or multiple conspiracies." We disagree. Because the facts did not warrant the requested instruction, the trial court did not commit error requiring reversal in failing to give the instruction on single or multiple conspiracies. *Dalton, supra* at 599.

Finally, defendant claims that the trial court erred in denying CJI2d 5.13. Defendant had requested this instruction with regard to the testimony of George Naoum and

-25-

Salwan Asker.  The instruction would not have been proper regarding Naoum because he testified that he had no agreement with the prosecutor regarding charges against him.  No evidence was presented that he did.  The trial court properly refused to give CJI2d 5.13 with regard to Naoum.

Salwan Asker did testify that he had made a "deal" with the federal government and with the Oakland County Prosecutor's office that, in exchange for his truthful testimony, he would not be prosecuted for his drug offenses.  Because the evidence regarding Salwan Asker supported the instruction, the trial court erred in failing to instruct the jury under CJI2d 5.13.  Even imperfect jury instructions, however, do not require reversal if they fairly present the issues to be tried and sufficiently protect the defendant's rights.  *Wolford, supra* at 481.  CJI2d 5.13 specifically provides that the jury only may consider evidence of a witness' agreement with the prosecutor as it relates to the witness' credibility in tending to show bias or self-interest.  Because the court instructed the jury several times to carefully consider Asker's testimony and because the jury instructions given indicated that for various reasons Asker's testimony might not be credible, that CJI2d 5.13 was not given was harmless error.  *Wolford, supra*.

*People v. Sitto*, 1997 WL 33354578, at *3-4.

A petitioner is entitled to habeas relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).  On habeas review, this Court is bound by the state court's interpretation of state law.  *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005).

In the present case, the jury instructions as given adequately protected the petitioner's right to a fair trial.  The only omitted instruction to which the petitioner was entitled was an instruction explaining the weight that may be given to the testimony of a witness cooperating with the

-26-

prosecution, specifically referring to Salwan Asker.  The omitted instruction would state that the jury may consider a witness's agreement with the prosecution only as it relates to the witness's credibility in tending to show bias or self-interest.  However, as the state court noted, the trial court instructed the jury several times to consider carefully Asker's testimony and the jury instruction indicated various reasons why Asker's testimony might not be credible.  The omission of the requested instruction did not deny the petitioner a fair trial.

This Court is not persuaded that the jury instructions as given denied the petitioner a fair trial, or so infected the entire trial that the resulting conviction violates due process.  Therefore, this Court concludes that the state court's resolution of the jury instruction claims is not contrary to or an unreasonable application of Supreme Court precendent.

## E.

The petitioner finally argues that cumulative error denied him a fair trial.  This claim is without merit because "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, it cannot be said that the state court's judgment was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d).  *Ibid.; see also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).  Any possible harm from the petitioner's claims, even when combined, is insufficient to undermine the Court's confidence in the outcome of the verdict.  *Cf. Tinsley v. Million*, 399 F.3d 796, 816 (6th Cir. 2005).

## III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not

established that he is presently incustody in violation of the Constitution or laws of the United

States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 30, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 30, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS